UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ESTATE OF STEVEN BLAND, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | 05-cv-2124 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

# MEMORANDUM OPINION

## I.   Liability

This civil action was filed under 28 U.S.C. § 1605(a)(7) and arises out of the bombing of the United States Marine barracks in Beirut, Lebanon on October 23, 1983. *See Bland v. Islamic Republic of Iran*, No. 05-CV-2124-RCL (D.D.C. 2005) Dkt. # 2 (Complaint). There are nearly 100 plaintiffs in this action, which includes numerous estates of those service members killed in the terrorist attack and dozens of family members of those who were killed or injured during the terrorist incident. On December 6, 2006, this Court took judicial notice of the findings of fact and conclusions of law in *Peterson v. Islamic Republic of Iran*, which also concerns the Marine barracks bombing, *see* 264 F. Supp. 2d 47 (D.D.C. 2003), and entered judgment in favor of the plaintiffs and against Iran with respect to all issues of liability. *Bland*, Dkt. # 15. This Court then referred this action to a special master for consideration of plaintiffs' claims for damages *See id.* Dkt. ## 15–16.

On March 10, 2008, and while this action was still pending with the special master under § 1605(a)(7), plaintiffs timely filed a motion seeking to proceed under the new state sponsored

terrorism exception of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A. *See id.* Dkt. # 17. This Court granted plaintiffs' motion, holding that plaintiffs followed the proper procedures to qualify for retroactive treatment under the National Defense Authorization Act of 2008, Pub. L. No. 110-181 § 1083(c)(2). *Bland*, Dkt. # 19. This enabled plaintiffs to take advantage of the new state sponsored terrorism exception in their claims before the special master. *See id.* Since the issue of liability has been previously settled, this Court now turns to examine the damages recommended by the special master.

## II.     Damages

Damages available under the FSIA-created cause of action "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). Accordingly, those who survived the attack may recover damages for their pain and suffering, as well as any other economic losses caused by their injuries; estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 82–83 (2010).

"To obtain damages against defendants in an FSIA action, the plaintiff must prove that the consequences of the defendants' conduct were 'reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with this [Circuit's] application of the American rule on damages.'" *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115–16 (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003) (internal quotations omitted)). As discussed in *Peterson II*, plaintiffs have proven that the defendants' commission of acts of extrajudicial killing and provision of material support and

resources for such killing was reasonably certain to—and indeed intended to—cause injury to plaintiffs. *Peterson v. Islamic Republic of Iran (Peterson II)*, 515 F. Supp. 2d 25, 37 (2007)

The Court hereby ADOPTS, just as it did in *Peterson* and *Valore*, all facts found by and recommendations made by the special master relating to the damages suffered by all plaintiffs in this case. *Id.* at 52–53; *Valore*, 700 F. Supp. at 84–87. However, where the special master has deviated from the damages framework that this Court has applied in previous cases, "those amounts shall be altered so as to conform with the respective award amounts set forth" in the framework. *Peterson II*, 515 F. Supp. 2d at 52–53. The final damages awarded to each plaintiff are contained in the table located within the separate Order and Judgment issued this date, and this Court discusses below any alterations it makes to the special master recommendations.

    A.    **Pain and Suffering of Survivors**

Assessing appropriate damages for physical injury or mental disability can depend upon a myriad of factors, such as "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." *Peterson II*, 515 F. Supp. 2d 25, n.26 (D.D.C. 2007) (citing *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 59 (D.D.C. 2006)). In *Peterson*, this Court adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages. *Id*. at 54. In applying this general approach, this Court has explained that it will "depart upward from this baseline to $7–$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadripeligic, partially lost vision and hearing, or were mistaken for dead," *Valore*, 700 F. Supp. 2d at 84, and will "depart downward to $2–$3 million where

victims suffered only minor shrapnel injuries or minor injury from small-arms fire," *id*. However, "i[f] death was instantaneous there can be no recovery . . . ." *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 112 (D.C. 2000) (citation omitted).  On the other hand, victims who survived a few minutes to a few hours after the bombing typically receive an award of $1 million.  *Id.*

Again, this Court ADOPTS all of special master awards for pain and suffering unless otherwise discussed below.  This Court also discusses below each situation where the special master departed upward or downward from the previously established damages framework.

### 1. Upward Departures.

The special master recommended an upward departure for two individuals.  John Gibson suffered from singed lungs, "second degree burns on his face, upper body, torso, back buttocks and back of his legs; a left frontal fracture of his skull; an intracranial hematoma; a perforated eardrum; and a retinal occlusion" as a result of the explosion at the BLT.  Special Master Rpt. Dkt # 65.  Over a long period of time he underwent a number of painful procedures to treat his injuries, but he remains "essentially cross-eyed, has never regained sight in [one] eye, and suffers from double-vision and trouble with depth perception."  He also lost a portion of his skull that was replaced with plastic.  He presently has a Veterans Administration disability rating of 90% and still suffers from nightmares, intense headaches, double-vision, short-term memory loss, and ringing in his ears.  In light of his disability rating and the exceptional severity of Mr. Gibson's injuries, the Court agrees with the special master and will depart upward from $5,000,000 to $8,000,000.

Emmanuel Simmons suffered from "a collapsed lung, second and third-degree burns on his face, chest, arms and thigh, burst ear drums and shrapnel embedded in his arms and legs."

4

Special Master Rpt. Dkt. # 49. Mr. Simmons had a skin graft attached to his face among other surgeries, and for a long time remained "extremely self-conscious that other people were staring at him." He received a 100% disability rating from the Veterans Administration upon discharge. He continues to have flashbacks of the bombing. In light of his disability rating and the exceptional severity of Mr. Simmons' injuries, the Court agrees with the special master and will depart upward from $5,000,000 to $7,000,000.

### 2.     Downward Departures

The special master recommended a downward departure for seven individuals. Alan Anderson witnessed the "mushroom cloud" over the BLT and "fe[lt] the ground moving." Special Master Rpt. Dkt. # 63. He did not suffer any physical injury in the attack. The Veterans Administration rated Mr. Anderson 50% disabled from Post-Traumatic Stress Disorder ("PTSD") he acquired as a result of the bombing. The Court concludes that Mr. Anderson suffered severe emotional injuries, but considering his lack of physical injuries, the Court will heed the special master's recommendation to depart down from $5,000,000 to $1,500,000.

John Hendrickson was knocked unconscious as a result of the blast but later assisted in the rescue efforts at the scene of the explosion. Special Master Rpt. Dkt. # 68. He died on April 13, 1990 from multiple sclerosis. After examining extensive expert reports, the special master concluded that there was no nexus between the onset of Mr. Hendrickson's multiple sclerosis and the bombing. This Court concurs, but nonetheless notes that Mr. Hendrickson did suffer from PTSD for a number of years upon returning to the United States. In light of the PTSD suffered by Mr. Hendrickson but lack of other severe physical injuries, the Court will agree with the special master that a downward departure from $5,000,000 to $1,500,000 is required.

Renard Manley was sleeping on the third floor of the BLT when the blast buried him in rubble. Special Master Rpt. Dkt. # 47. He received contusions and lacerations covering most of his body. He was confined to a wheelchair for a few weeks and then remained on crutches for a year. He received a 50% Veterans Administration disability rating for PTSD. The Court concludes that Mr. Manley suffered severe emotional injuries, but considering the nature of his physical injuries the Court will agree with the special master that a downward departure from $5,000,000 to $4,000,000 is required.

Samuel Palmer was sleeping in the basement of the BLT when he was buried by the blast. Special Master Rpt. Dkt. # 35. He suffered an unspecified head injury, a hole in his eardrum, and a broken foot. To this day he continues to suffer pain and swelling in that foot, as well as sleep, and mood disorders. He currently holds a 10% Veterans Administration disability rating for his hearing loss, 50% for his PTSD, and 30% for his foot, for a combined disability rating of 80%. The special master concluded that a downward departure from $5,000,000 to $3,000,000 was necessary. However, given the severity of Mr. Palmer's Veterans Administration disability rating coupled with the lifelong pain his foot has caused him, the Court finds that the special master's downward departure was excessive, and accordingly, awards Mr. Palmer $4,500,000 for his pain and suffering.

Robert Rucker was shaving in a facility 80 meters away from the BLT when the explosion caused "lacerations on his left arm, bruising, blurred vision, impaired hearing and a sore head from being hit by concrete." Special Master Rpt. Dkt. #59. He does not yet have a Veterans Administration disability rating, but his medical records demonstrate that he has been diagnosed with PTSD. The Court agrees with the special master that a downward departure from $5,000,000 to $2,000,000 is required because of the nature of Mr. Rucker's injuries.

Ronald Walker was patrolling about 150 yards away from the BLT when the explosion occurred. Special Master Rpt. Dkt. # 35. He suffered lacerations to his thigh and rib cage. *Id.* Years later, he received a 70% disability rating from the Veterans Administration as a result of PTSD. Because of the less severe nature of his physical injuries, while not discounting the severe psychological and emotional toll he suffered, this Court agrees with the special master that a downward departure from $5,000,000 to $2,000,000 is required.

Galen Weber was immediately outside the BLT sleeping in a tent when the explosion occurred. Special Master Rpt. Dkt. # 29. He suffered a leg injury and received treatment for 7 or 8 days after the attack. He received a Veterans Administration disability rating of 10% for the leg injury and 10% for degenerative discs in his back, but only the leg injury was attributable to the Beirut bombing. In light of these circumstances, this Court agrees with the special master that a downward departure from $5,000,000 to $2,000,000 is required.

### B.     Economic Loss

In addition to pain and suffering, several plaintiffs who survived the attack and the estates of several survivors have proven to the satisfaction of the special master, and thus to the satisfaction of the Court, lost wages resulting from permanent and debilitating injuries suffered in the attack or loss of accretions to the estate resulting from the wrongful death of decedents in the attack. *See Valore*, 700 F. Supp. 2d at 85. The Court therefore ADOPTS without modification the damages awarded for economic loss recommended by the special master.

### C.     Solatium

This Court developed a standardized approach for FSIA intentional infliction of emotional distress, or solatium, claims in *Heiser v. Islamic Republic of Iran*, where it surveyed past awards in the context of deceased victims of terrorism to determine that, based on averages,

"[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F. Supp. 2d 229, 269 (2006).  Relying upon the average awards, the *Heiser* Court articulated a framework in which spouses of deceased victims were awarded approximately $8 million, while parents received $5 million and siblings received $2.5 million.  *Id.*; *see also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson II*, 515 F. Supp. 2d at 51).  As this Court recently explained, in the context of distress resulting from injury to loved ones—rather than death—courts have applied a framework where "awards are 'valued at half of the awards to family members of the deceased'—$4 million, $2.5 million and $1.25 million to spouses, parents, and siblings, respectively." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 n.10 (D.D.C. 2011) (quoting *Valore*, 700 F. Supp. 2d at 85).  Children of a deceased victim typically receive an award of $3 million, while children of a surviving victim receive $1.5 million.  *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003).  "[C]urrent spouses who were not yet married to an injured serviceman at the time of the attack . . . are among the group of plaintiffs who cannot recover damages . . . ."  *Peterson II*, 515 F. Supp. 2d at 45 n.21.

In applying this framework, however, courts must be wary that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (2010), and that deviations may be warranted when, *inter alia*, "evidence establish[es] an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship; medical proof of severe pain, grief or suffering on behalf of the claimant [is presented]; and circumstances surrounding the terrorist

attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27.

This Court ADOPTS all of special master awards for solatium unless otherwise discussed below. This Court also discusses below each situation where the special master departed upward or downward from the previously established damages framework.

### 1. Upward Departures.

The special master did not recommend—nor does the Court think it appropriate—granting upward departures for any of the solatium claims in this case. Inadvertently, the special master appears to have granted upward departures to two plaintiffs.

Tena Walker-Jones's brother Eric Walker was killed instantaneously by the explosion. Special Master Rpt. Dkt. # 31. As previously discussed, a sibling of a deceased servicemember typically receives a $2.5 million solatium award under the *Heiser* framework. 466 F. Supp. 2d at 269. The special master concluded that "no evidence has been put forward" warranting a departure from the baseline. *Id.* However, the special master nonetheless awarded Ms. Walker-Jones solatium damages of $3 million. Therefore, this Court will correct the award to Ms. Walker-Jones and reduce it to $2.5 million.

Ronnie Walker's father Ronald Walker survived the attack, albeit suffering severe PTSD as a result. Special Master Rpt. Dkt. # 33. As previously discussed, a child of a surviving servicemember typically receives a $1.5 million solatium award. *See Stern*, 271 F. Supp. 2d at 301. The special master explained that "nothing in the record" compelled a deviation from the established framework. However, the special master nonetheless awarded Ronnie Walker $2.5 million in solatium damages. Therefore, this Court will correct the award to Ronnie Walker and reduce it to $1.5 million.

### 2. Downward Departures

The special master recommended downward departures for four individuals. Thelma Anderson was, understandably, "very very scared" before discovering that her son, Alan Anderson, was alive and unharmed by the explosion. Special Master Rpt. Dkt. # 63. Alan later suffered from PTSD. While the Court concludes that Ms. Anderson suffered emotional injury, considering her son's lack of physical injuries the Court will heed the special master's recommendation to depart down from $5,000,000 to $1,000,000.

John David Hendrickson and Tyson Hendrickson, the sons of John Hendrickson, as well as his wife Deborah Ryan, also suffered emotional trauma as a result of Mr. Hendrickson's injuries in Beirut. Special Master Rpt. Dkt. #68. However, as previously discussed, there was no convincing evidence that Mr. Hendrickson's multiple sclerosis, leading to his death, was caused by the Beirut bombing. In light of the $1,500,000 award Mr. Hendrickson received for his pain and suffering related to the bombing, the Court does not think it appropriate for the children and spouse to recover more than the victim. Therefore, the Court agrees with the special master that John David and Tyson should receive solatium awards of $750,000 and Deborah Ryan should receive a solatium award of $1,000,000.

### D. Punitive Damages

In assessing punitive damages, this Court has observed that any award must balance the concern that "[r]ecurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect . . . .," *Murphy*, 740 F. Supp. 2d at 75, against the need to continue to deter "the brutal actions of defendants in planning, supporting and aiding the execution of [terrorist attacks]," *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d at 163, 184 (D.D.C. 2010). To

accomplish this goal, this Court—relying on the Supreme Court's opinion in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007)—held that the calculation of punitive damages in subsequent related actions should be directly tied to the ratio of punitive to compensatory damages set forth in earlier cases. *Murphy*, 740 F. Supp. 2d at 76. Thus, in *Murphy* this Court applied the ratio of $3.44 established in *Valore*—an earlier FSIA case arising out of the Beirut bombing. *Id*. at 82-83 (citing *Valore*, 700 F. Supp. 2d at 52). Here, the Court will again apply this same $3.44 ratio, which has been established as the standard ratio applicable to cases arising out of the Beirut bombing. Application of this ratio results in a total punitive damages award of $955,652,324.

### III.   CONCLUSION

In closing, the Court appreciates plaintiffs' selfless sacrifice and their persistent efforts to hold Iran and MOIS accountable for their support of terrorism. The Court concludes that defendants Iran and MOIS must be punished to the fullest extent legally possible for the bombing in Beirut on October 23, 1983. This horrific act impacted countless individuals and their families, nearly one hundred of whom are parties to this lawsuit. This Court hopes that the victims and their families may find some measure of solace from this Court's final judgment. For the reasons set forth above, the Court finds that defendants are responsible for plaintiffs' injuries and thus liable under the FSIA's state-sponsored terrorism exception for $227,805,908 in compensatory damages and $955,652,324 in punitive damages, for a total award of $1,233,458,232.

A separate Order and Judgment consistent with these findings shall be entered this date.

SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, on December 21, 2011.